IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORSI BONNER, | No. C 06-04374 CRB |
| Plaintiff, | **MEMORANDUM AND ORDER** |
| v. | |
| FUJI PHOTO FILM, et al., | |
| Defendants. | |

Now pending before the Court are (1) Plaintiff's Motion to Remand and (2) Plaintiff's Motion to Join Additional Defendants. For the reasons set forth below, Plaintiff's motions are DENIED.

**BACKGROUND**

Dorsi Bonner claims that her picture has been misappropriated and used on packaging for disposable cameras. She does not know exactly how her likeness made its way onto the cameras, but she wants someone to pay for it — to the tune of some undetermined amount, but not less than $75,000. She asserts various causes of action under California law for the wrong she has suffered, among them invasion of privacy, appropriation of likeness, intentional infliction of emotional distress, negligence, unfair business practices, and the violation of several state statutes.

Bonner originally filed suit on January 13, 2006, in Alameda County Superior Court. The only defendant she named was Fuji Photo Film U.S.A., Inc. ("Fuji"), the manufacturer of the disposable cameras. Compl. ¶ 2. In addition, she named numerous "Doe" defendants, who she alleges were "responsible in some manner" for the injuries she suffered. Id. ¶ 3.

Fuji then turned around and filed a third-party complaint against three other parties, alleging that these parties were liable for any damage that Fuji may have caused to Bonner. The third-party defendants were Edward Menuez ("Menuez"), Getty Images ("Getty"), and LAM Design Associates ("LAM"). Menuez is the photographer who took Bonner's picture in 1993. Getty is a business entity that purchased the rights to Bonner's picture from Menuez. And LAM is a design firm that purchased a license for the picture from Getty and designed the packaging for the disposable cameras on which Bonner's likeness appeared. All of these third-party defendants, like Fuji, are New York citizens.

Everyone agrees that not later than June 6, 2006, Bonner had placed each of the other parties in the case — Fuji, Menuez, Getty, and LAM — on notice that the case was subject to removal to federal court. Bonner's complaint clearly establishes diversity of citizenship, at least as to the named plaintiff and the named defendant. See id. ¶ 1 (alleging Bonner's California citizenship); id. ¶ 2 (alleging Fuji's New York citizenship). And although the four corners of the complaint do not establish that the amount in controversy exceeds $75,000, all of the parties have explicitly conceded that they became aware, in the course of their negotiations and conversations, that this jurisdictional requirement was met, too. See Decl. of Stephen L. Rummage ¶ 2 ("On June 1, 2006, I spoke by telephone with plaintiff's counsel, Charles A. Bonner. . . . My conversation with Mr. Bonner, combined with the face of the Complaint . . . left absolutely no doubt that the plaintiff sought more than $75,000 in this action."). Thus, every party in the case has indicated that it perceived the basis for federal jurisdiction prior to June 6, 2006, when the final third-party defendant (Menuez) confirmed service of process as to Fuji's third-party complaint.

Upon seeing Fuji's attempt to pass liability along to these third-party defendants, however, Bonner decided to add them as direct defendants in her own lawsuit. She served a

2

copy of her complaint on Getty on June 20, 2006, naming that entity as "Doe 2." She served a copy of her complaint on LAM on July 13, 2006, naming that entity as "Doe 1." The parties also indicate in their filings, and they represented at oral argument, that Bonner served a copy of her complaint on Menuez as "Doe 3." The record does not reveal when she actually served Menuez, but that fact is immaterial for purposes of the pending motions. All of the parties agree that, under California law, Bonner's service on these "Doe" defendants had the effect of establishing a direct cause of action against them, thereby incorporating them into Bonner's lawsuit as actual defendants, and not merely third-party defendants.

On July 17, 2006, Getty and LAM removed the case to this Court on the basis of diversity jurisdiction. In response, Bonner filed a motion to remand, arguing that removal was untimely. Bonner also filed a motion to join two additional parties. This second motion, if granted, would also require a remand, since both of the parties that Bonner seeks to add as defendants are alleged to be California citizens whose presence would destroy diversity.

## DISCUSSION

### I. Motion to Remand

The federal removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). In addition, federal law establishes a thirty-day window for the removal of cases to federal court on the basis of diversity jurisdiction. Id. § 1332(b). The thirty-day period commences at different times, depending on the nature of the case. In a case where the complaint clearly indicates that the matter is removable, the clock starts running upon service of the complaint. In a case where the complaint does not clearly indicate the basis for removal, the clock starts running when the defendant receives a "motion, order, or other paper" putting them on notice that the case is removable. Id.; see also Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 672 (9th Cir. 2005). A district court must remand a case removed in an untimely fashion. See, e.g., Cantrell v. Great Republic Ins. Co., 873 F.2d 1249, 1256 (9th Cir. 1989).

3

1  Here, all parties agree that Getty and LAM filed their notice of removal on July 17,
2  2006. The disputed issue is whether their thirty-day removal window expired prior to that
3  date. In other words, did the thirty-day clock start ticking prior to June 17, 2006? If so,
4  removal was untimely, and remand is required. If not, removal was timely, and this Court
5  retains jurisdiction. The timeliness of removal in this case hinges on two distinct issues of
6  law.

*A. Removal by Third-Party Defendants*

The first issue is whether Getty and LAM could have removed the case to federal court while they were third-party defendants in state court. If so, then Getty and LAM would have been able to remove the case when Fuji served them as third-party defendants in early June, and their removal on July 17, 2006, would be untimely. If not, then Getty and LAM would not have been able to remove the case until Bonner substituted them for some of the "Doe" defendants on June 20, 2006, and July 13, 2006, respectively, and their removal would be timely.

It is an interesting and open question of law whether third-party defendants may remove a complaint against them into federal court.[1] That issue, however, is inapposite here. There can be no dispute that neither Getty, nor LAM, nor Menuez could have removed Fuji's

---

[1] Whether a third-party defendant has power to remove cases to federal court is an unsettled issue of law in the Ninth Circuit. See O'Halloran v. Univ. of Wash., 856 F.2d 1375, 1381 (9th Cir. 1988) ("[W]e need not reach the interesting question whether third-party defendants are defendants for purposes of the removal statute."). While there appears to be a split in authority on the subject, "[t]he majority view is that the determination of who is a defendant is determined by the original complaint, not subsequent third or fourth-party complaints." Schmidt v. Ass'n of Apt. Owners of Marco Polo Condos., 780 F. Supp. 699, 704 (D. Haw. 1991); see also First Nat'l Bank of Pulaski v. Curry, 301 F.3d 456, 463 (6th Cir. 2002) ("[C]onstruing the removal statute narrowly, we conclude that third-party defendants do not have a statutory right of removal pursuant to § 1441(a)."). But see Southland Corp. v. Estridge, 456 F. Supp. 1296, 1301 (C.D. Cal. 1978) ("Third Party defendants, like other defendants who have not voluntarily chosen to utilize state court, should be, and are, allowed to remove separate and independent claims"). The leading federal treatises have concluded that the removal statute should be construed as granting the power of removal only to defendants named by the plaintiff. See 16 Moore's Federal Practice § 107.11[1][b][4], at 107-35 (3d ed. & Supp. 2006) ("The better view, consistent with the principle that removal jurisdiction is to be strictly construed, is that third-party claims are not removable, because only a party defending against claims asserted by a plaintiff ought to be able to remove."); 14C Charles Alan Wright et al., Federal Practice and Procedure § 3731, at 253-54 ("Nor can third-party defendants brought into the state action by the original defendant exercise the right of removal to the federal court, although there is authority to the contrary . . . .").

4

complaint against them to federal court because there was no basis for federal jurisdiction. All of these parties are citizens of New York. Thus, even assuming the authority of third-party defendants to remove cases to federal court, no such authority existed in this case because there was no basis for federal jurisdiction as to the claims in which Getty, LAM, and Menuez were involved. This Court is aware of no authority, and the parties have offered none, to support the proposition that third-party defendants may remove a case to federal court on the basis that there would be federal jurisdiction if the plaintiff had established direct claims against them. Accordingly, Getty and LAM gained power to remove the case to federal court, if at all, only when Bonner established a direct cause of action against them on June 20, 2006, and on July 13, 2006, respectively.

*B. Removal by Later-Served Defendants*

The next issue is whether Getty and LAM had power to remove the case as subsequently named defendants. It is clear that removal would have been improper if the first-named defendant, Fuji, had attempted to remove the case on July 17, 2006, because Fuji was both identified as a defendant and put on notice of the basis for federal jurisdiction more than thirty days prior to removal. Getty and LAM contend, however, that the expiration of Fuji's thirty-day clock did not render their removal untimely. The case thus squarely poses an unsettled question of law: may a later-served defendant remove a case even though the thirty-day removal period has already expired as to the first-served defendant? In other words, does the thirty-day period begin to run as to all defendants when it begins to run as to any of them (the "first-served rule"), or does each defendant have its own thirty-day clock (the "last-served rule")?

The Ninth Circuit has not decided a case squarely on point. See United Computer Sys. v. At&T Info. Sys., 298 F.3d 756, 763 n.4 (9th Cir. 2002) (noting a split of authority on the issue but "express[ing] no opinion today on the propriety of either rule"). The circuit courts are divided on the issue. Compare Brown v. Demco, Inc., 792 F.2d 478, 481-82 (5th Cir. 1986) (applying the first-served rule), with Marano Enters. of Kan. v. Z-Teca Rests., L.P., 254 F.3d 753, 756-57 (8th Cir. 2001) (applying the last-served rule); and Brierly v.

5

1  Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 533 & n.3 (6th Cir. 1999) (applying the
2  last-served rule); see also McKinney v. Bd. of Tr. of Md. Cmty. College, 955 F.2d 924,
3  927-28 (4th Cir. 1992) (applying a variant of the first-served rule that allows new defendants
4  thirty days to join an "otherwise valid" petition for removal).  And district courts have come
5  to competing conclusions, even within the Ninth Circuit.  Compare McAnally Enters. Corp.
6  v. McAnally, 107 F.Supp.2d 1223, 1227-29 (C.D. Cal. 2000) (applying first-served rule), and
7  Biggs Corp. v. Wilen, 97 F.Supp.2d 1040, 1044-46 (D. Nev. 2000) (same), and Transp.
8  Indem. v. Fin. Trust Co., 339 F. Supp. 405, 406-07 (C.D. Cal. 1972) (same), with Griffith v.
9  Am. Home Prods. Corp., 85 F.Supp.2d 995, 1000-01 (E.D. Wash. 2000) (applying last-
10 served rule).  Indeed, even judges within the Northern District of California have not agreed
11 upon the proper approach.  Compare Varney v. Johns-Manville Corp., 653 F. Supp. 839, 840
12 (N.D. Cal. 1987) (applying first-served rule), with Ford v. New United Motors Mfg., Inc.,
13 857 F. Supp. 707, 710 (N.D. Cal. 1994) (applying last-served rule).
14         It is not possible to discern a preferred approach to this issue among the courts that
15 have addressed it.  Several courts have described the "first-served rule" as the "majority
16 rule."  See McAnally, 107 F.Supp.2d at 1227; Wilen, 97 F.Supp.2d at 1044; see also 14C
17 Wright et al., Federal Practice and Procedure § 3732, at 336-39 & nn. 74-75 (citing a
18 significantly larger number of cases adopting the first-served rule).  Yet the cases also
19 indicate a trend away from that rule and in favor of the last-served rule.  For example, while
20 the Fifth Circuit adopted the first-served rule in 1986, see Brown, 792 F.2d at 481-82, the
21 last-served rule was adopted more recently by the Sixth Circuit in 1999, see Brierly, 184 F.3d
22 at 533 & n.3, and the Eight Circuit in 2001, see Marano Enterprises, 254 F.3d at 756-57.  As
23 one leading federal treatise notes, there is a trend away from the "traditional view . . . [that]
24 the 30-day removal period begins to run when the first defendant is served."  16 Moore's
25 Federal Practice § 107.30[3][a][4][c], at 107-178.  "[M]ore recently courts have held that this
26 rule penalizes those defendants that are served after others, and these courts calculate the 30-
27 day period separately for each defendant."  Id.
28

6

This Court hereby adopts the last-served rule. The Court is persuaded that this rule is preferable for several reasons. First, although the text is not absolutely clear, the most plausible reading of the statute is that Congress intended to extend the right of removal to <u>all</u> defendants in a civil action, regardless of when they became parties to a case. <u>See</u> 28 U.S.C. § 1441(a) (permitting removal by "the defendant *or the defendants*" (emphasis added)). The statute itself says nothing of the order in which defendants are or are not served, and this Court is reluctant to read additional limitations into the statutory text, which merely demands that a defendant remove a case promptly once it is served or becomes aware of the basis for removal. <u>See</u> <u>Brierly</u>, 184 F.3d at 533 ("[A]s a matter of statutory construction, holding that the time for removal commences for all purposes upon service of the first defendant would require us to insert 'first' before 'defendant' into the language of the statute. We are naturally reluctant to read additional words into the statute, however." (citation omitted)). Second, the last-served rule prevents opportunistic pleading by the plaintiff. Under the contrary rule, a plaintiff could thwart removal by delaying the naming of certain defendants until after the first-named defendant's window of removal expires; by contrast, under the last-served rule, a plaintiff cannot gain any advantage with the timing or tactics of his pleadings. A defendant's right to a federal forum should not hinge on the happenstance of when a plaintiff pleases to incorporate the defendant into the case. <u>See, e.g.</u>, <u>Griffith</u>, 85 F.Supp.2d at 1000 ("[T]he removal statute should not be so strictly construed as to deny defendants significant procedural rights before becoming parties to an action."). Indeed, in other jurisdictional contexts, courts have frequently considered it important to discourage gamesmanship in the choice of judicial forum. <u>Cf.</u> <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365, 374 (1978) (rejecting an interpretation of a jurisdictional statute that would have permitted a plaintiff to concoct federal jurisdiction "by the simple expedient of suing only those defendants who were of diverse citizenship and waiting for them to implead nondiverse defendants"), <u>superseded by statute</u>, Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 310(a), 104 Stat. 5089, 5113 (codified at 28 U.S.C. § 1367).

7

1    Moreover, the Court finds the arguments in favor of the first-served rule unpersuasive.
2 Far and away the most frequently noted justification for the first-served rule is that it
3 "follows logically from the unanimity requirement . . . and the fact that a defendant may
4 waive removal by proceeding in state court." Brown, 792 F.2d at 482.  In other words,
5 courts have adopted the first-served rule on the logic that, since all defendants must join in
6 the removal of a case to federal court, see Hewitt v. City of Stanton, 798 F.2d 1230, 1232
7 (9th Cir. 1986), the failure of a first-served defendant to remove should be interpreted as a
8 waiver of the right of removal and should preclude later-served defendants from removing
9 the case. Wilen, 97 F.Supp.2d at 944.  That logic is seriously flawed.  After all, a first-served
10 defendant may be content in either state or federal court, in which case he may decline to
11 remove the case himself but would be perfectly happy to consent to removal by a
12 codefendant.  It simply does not follow that a first-served defendant has refused his consent
13 to removal simply because he has not affirmatively exercised the right of removal.  Finally, it
14 is worth noting that the last-served rule would not, as might be feared, grant newly named
15 defendants the dangerous and disruptive power to remove longstanding state-court
16 proceedings. See Brown, 792 F.3d at 482 ("To permit the defendants in this case to obtain
17 removal after they have tested state-court waters for four years would give them a second
18 opportunity to forum-shop and further delay the progress of the suit.").  As it is currently
19 written, the federal statute absolutely bars the removal of any diversity case more than one
20 year after it begins. See 28 U.S.C. § 1446(b) ("[A] case may not be removed on the basis of
21 [diversity] jurisdiction . . . more than 1 year after commencement of the action.").  Thus, the
22 statute itself adequately guards against the hazard and prejudice of removing half-litigated
23 cases.

24    Although the Ninth Circuit has reiterated that courts must "strictly construe the
25 removal statute," Gaus, 980 F.2d at 566, that exhortation to strict construction is not an
26 inexorable command to refuse removal in contravention of the best reading of the statutory
27 text.  Indeed, it is appropriate to interpret the statute as permitting removal where, as here,
28 that interpretation is supported by sound judicial policy and the growing weight of authority.

The Court therefore holds that Getty and LAM were not precluded from seeking removal even though the thirty-day clock had expired as to the first-served defendant, Fuji.

### *C. Conclusion*

In sum, neither their initial status as third-party defendants nor their position as subsequently served defendants renders removal by Getty and LAM improper.  To the contrary, the Court holds that Getty and LAM lacked power to remove the case until Bonner named them as direct defendants, and that the thirty-day clock started did not start ticking for them until that time.  Accordingly, the Court holds that removal of the case by these parties on July 17, 2006, was timely.

### **II.  Motion to Join Additional Defendants**

Bonner has also moved to join two additional defendants.  The first would-be defendant is a California corporation called Reportage, Inc. ("Reportage").  Bonner suggests that this corporation should be joined because Menuez formerly conducted his business as a photographer through an entity known as Reportage, and because an entity by that name appears on a contract that Bonner apparently signed in connection with the taking of her picture.  The parties do not agree, however, that the California corporation Bonner seeks to join is, or ever was, actually owned and operated by Menuez.  To the contrary, the defendants have represented to the Court that the business entity formerly owned and operated by Menuez is a Rhode Island corporation, and that the party Bonner seeks to add to the lawsuit is an unrelated (and possibly defunct) California corporation with the same name.  Bonner does not deny the defendants' representations, but she claims that at this stage in the proceedings, the Court needs only to concern itself with her allegation that the purported defendant is a California corporation and her allegation that there is a connection between her photograph and an entity with the same name as the would-be defendant.

The second purported defendant is Disney Publishing Worldwide ("Disney"), a California corporation that publishes Family Fun Magazine — a periodical in which Bonner's photograph appeared many years ago.  Bonner does not make any specific allegation of wrongdoing on Disney's part.  Nor does she explain how any action by Disney

9

may have resulted in the appearance of her likeness on Fuji's disposable cameras. Instead, Bonner claims that Disney should be a defendant merely on the basis of the allegation that her picture first appeared in Disney's magazine and next appeared, more than a decade later, on Fuji's cameras.

Because Bonner is seeking the post-removal joinder of two non-diverse defendants, this Court "may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). As the Ninth Circuit has noted, the statute "is couched in permissive terms and it clearly gives the district court the discretion to deny joinder." Newcombe v. Adolf Coors Co., 157 F.3d 686, 691 (9th Cir. 1998). In determining whether to permit or refuse joinder, the district court may consider, among other things, (1) whether the would-be defendants are necessary for just adjudication of the controversy, (2) whether the plaintiff still could bring an action in state court against the putative defendants, (3) whether there has been any unexplained delay in joinder, (4) whether it appears the plaintiff is seeking to destroy diversity, (5) the apparent merit of the claims against the new parties, and (6) whether plaintiff would suffer prejudice without the joinder of the defendants. Palestini v. Gen. Dynamics Corp., 193 F.R.D. 654, 658 (S.D. Cal. 2000) (citing William J. Schwarzer, et al., California Practice Guide, Federal Civil Procedure Before Trial § 2:1078, at 2D-202 (1999)).

Here, the Court finds that these various factors weigh heavily against permitting joinder. First, and most significantly, it appears that the addition of these two California corporations is merely an attempt to defeat federal jurisdiction. The suspicious timing of Bonner's effort to add Disney and Reportage as defendants, combined with her demonstrated indifference in determining the factual foundation and plausibility of her claims against them, indicate that Bonner's motive in joining these putative defendants is merely to return to state court. In a similar vein, Bonner has failed to explain why she waited until after removal to add these would-be defendants — an omission that is particularly glaring given that she has long known about her picture's appearance in Disney's magazine and that she knew for some time before the case was removed about the existence of Reportage. Moreover, under the

facts as currently alleged, there is no reason to think that Bonner would have a meritorious claim against either Disney or Reportage, much less that either of these parties would be necessary or indispensable to the adjudication of the case.  (Indeed, an argument could be made that the doctrine of fraudulent joinder affirmatively requires the dismissal of these defendants, see McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987), though the Court does not now decide that question.)  Furthermore, there is no indication that the named defendants — who appear, by inference from their own pleadings against one another, to be satisfied that any liability for Bonner's injury would be apportioned among them — would be unable to satisfy any judgment in Bonner's favor.  While the Court would be willing to reconsider Bonner's motion to join Disney and Reportage at a later time if additional support for Bonner's claims against them surfaces, the record currently before the court suggests that Bonner could not prevail against either of these would-be defendants.  In short, under these circumstances, all of the relevant factors weigh against joinder of Disney and Reportage.

Indeed, in a case with remarkably similar facts, the Ninth Circuit held that a district court did not abuse its discretion in denying joinder.  In Newcombe, a former major-league all-star pitcher sued a brewing company in state court. 157 F.3d at 689.  The pitcher alleged that the brewer had used an "exact replica" of his likeness in its beer advertisements.  After removal to federal court and further discovery, the pitcher discovered the identity of the artist who had misappropriated his image, and the pitcher attempted to join the California artist as a non-diverse defendant.  Id. at 690.  The district court denied joinder, and the Ninth Circuit affirmed.  Id. at 690-91.  If it was within the district court's discretion to deny joinder of the actual and admitted wrongdoer in Newcombe, it is assuredly within this Court's discretion to deny the joinder of Disney and Reportage, as to whom the Plaintiff has alleged no actual connection to any wrongdoing.

## CONCLUSION

Because Getty and LAM could not have removed the case while they were third-party defendants, and because they obtained power to remove the case only upon Bonner's

11

incorporation of them as direct defendants in her lawsuit, their removal was not untimely. Accordingly, the Court DENIES Plaintiff's motion to remand.  Because the addition of Reportage and Disney appears both unnecessary to the adjudication of the case, unrelated to any possible wrongdoing, and designed solely to destroy federal jurisdiction, the Court declines to exercise its discretion to join them as defendants under § 1447(e).  Accordingly, the Court DENIES Plaintiff's motion to join additional defendants.

**IT IS SO ORDERED.**

Dated: November 13, 2006

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE