IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORSI BONNER, | No. C 06-04374 CRB |
| Plaintiff, | **ORDER** |
| v. | |
| FUJI PHOTO FILM, et al., | |
| Defendants. | |

This case involves a dispute over the defendants' allegedly unauthorized use of plaintiff's photograph on the back of a "Fuji Flash 400 2-Pack," a product containing two disposable cameras. Because plaintiff's mother validly consented to the photograph being used "for any purpose whatsoever," defendants' motion for summary judgment is GRANTED.

**BACKGROUND**

On November 12, 1993, when the plaintiff Dorsi Bonner was seven-years old, she participated in a photo shoot for <u>Family Fun Magazine</u>. Bonner was accompanied by her mother, Christine Schnebly, who signed a consent form that read:

> For valuable consideration, I hereby irrevocably consent to and authorize the use and reproduction by you, or anyone authorized by you, of any and all photographs taken by Doug Menuez/Reportage negative or positive, for any purpose whatsoever, without compensation to me. All negatives and positives, together with the prints shall constitute your property, solely and completely.

Bonner Decl. Exh. 6.

At the photo shoot, defendant Douglas Menuez – a professional photographer– took a picture of Bonner dressed as a clown.  Photographs of Bonner taken by Menuez subsequently appeared in the February 1994 edition of <u>Family Fun Magazine</u>.  <u>See</u> Lagarde Decl. Exh. 6.

Unbeknownst to Bonner, Menuez entered into a license agreement with Photodisc, Inc. in 1996, agreeing to provide photographs to Photodisc for licensing to third parties in exchange for a 20% commission of net income from such licensing activities.  <u>See</u> Menuez Depo. 81-82; 113:2-24.  One of the photos licensed by Menuez included the photograph at issue in this case.

Defendant Getty Images then bought Photodisc, and the photograph of Bonner became part of their collection.  <u>See</u> Menuez Depo. 111: 19-25.  In 2001, defendant Fuji launched a new marketing plan for its family of disposable cameras.  As part of this plan, Fuji created the "Flash 400 2-Pack," which was intended to offer a "value" option to camera consumers.  <u>See</u> Lund Decl. ¶¶ 3-5.  Fuji hired a design firm – LAM Design Associates (LAM) – to design the packaging for its Flash 400 2-Pack.  <u>See id.</u> ¶ 4.  Fuji provided LAM with three criteria for any photographs that would be used on the packaging: they must (1) demonstrate vivid colors; (2) depict "fun" activities; and (3) demonstrate ethnic diversity.  <u>See id.</u> ¶ 8.

LAM proposed a package with a picture of two cameras on the front, accompanied by a bubble on the upper right-hand corner declaring "Great Value 2-Pack Flash."  <u>See</u> Lagarde Exh. 4.  The back of the package featured the photo of Bonner and another girl dressed as clowns, which LAM had licensed from Getty for $99.95.  <u>See id.</u> Exh. 5; Lafortezza Decl. Exh. A.  The top of the package included a small photo of the same size titled "mother and child."

Before using the photo, Fuji required assurance from LAM that all photos proposed were royalty- and rights-free.  <u>See</u> Lund Decl. ¶ 9.  The invoice supplied by LAM contended that the photos were "royalty-free stock photos."  <u>See id.</u> Exh. A.

In May of 2004, Bonner attended a party where she ran into friends who showed her the Fuji 2-Pack, and asked whether the picture was of her.  <u>See</u> Bonner Decl. 59:15-24.  At

2

the time, Bonner thought the girl looked like her, but she did not understand why her picture would be on the Fuji box. See id. 60. On January 13, 2006, Bonner's father – Charles Bonner – filed a complaint in state court alleging six causes of action: (1) violation of California Civil Code § 3344; (2) common law appropriation of likeness; (3) violation of California Business & Professions Code § 17200; (4) negligence; (5) intentional infliction of emotional distress; and (6) invasion of privacy. In July, Getty and LAM removed the action to this Court on the basis of diversity jurisdiction.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the non-moving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

A party moving for summary judgment that does not have the ultimate burden of persuasion at trial has the initial burden of either producing evidence that negates an essential element of the non-moving party's claims or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). Where the party moving for summary judgment would bear the burden of proof at trial, it bears the initial burden of producing evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. See C.A.R. Transp. Brokerage Co. v. Darden

Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000). If the moving party does not satisfy its initial burden, the non-moving party has no obligation to produce anything and summary judgment must be denied. If, however, the moving party satisfies its initial burden of production, then the non-moving party may not rest upon mere allegations, or denials of the adverse party's evidence, but instead must produce admissible evidence to show there exists a genuine issue of material fact. See Nissan Fire & Marine, 210 F.3d at 1102.

## DISCUSSION

Defendants Getty Image and LAM Design – joined by Douglas Menuez – move for summary judgment on all six counts alleged in Bonner's complaint. For the foregoing reasons, that motion is granted.

A. Count One: California Civil Code § 3344 (DENY)

California Civil Code § 3344 represents the California legislature's attempt to provide statutory authority for "Right of Privacy" causes of action. See Robert B. Miller, Commercial Appropriation of An Individual's Name, Photograph or Likeness: A New Remedy for Californians, 3 Pac. L. J. 651, 651 (1972). The statute provides that:

> Any person who knowingly uses another's . . . photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof.

Cal. Civ. Code § 3344(a).

Courts have discerned from this and accompanying statutory language five distinct elements to the tort: (1) the defendant's knowing use of plaintiff's identity; (2) the commercial appropriation of plaintiff's name or likeness to defendant's advantage; (3) a direct connection between the use and the commercial purpose; (4) lack of consent; and (5) resulting injury. See Abdul-Jabbar v. General Motors Corp., 85 F.3d 407, 414 (9th Cir. 1996). Summary judgment is appropriate on this claim because Bonner cannot establish lack of consent.

Bonner forwards numerous arguments for why the consent form does not control this case, but none are persuasive. First, Bonner argues that her mother understood the release to

4

apply only to Family Fun Magazine. In other words, according to Schnebly, she only understood the release to allow Family Fun Magazine to publish Bonner's photos for "any purpose whatsoever." But "California recognizes the objective theory of contracts, under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation. The parties' undisclosed intent or understanding is irrelevant to contract interpretation." Cedars-Sinai Med. Ctr. v. Shewry, 137 Cal. App. 4th 964, 980 (2006) (internal citations, quotations and alterations omitted) (emphasis added).

Courts are only allowed to consider the parties' subjective intent if the contract is ambiguous, meaning "capable of more than one reasonable interpretation." Badie v. Bank of Am., 67 Cal. App. 4th 779, 798 (1998). The contract signed by Schnebly is not capable of more than one reasonable interpretation. The release clearly states that Menuez – or anyone authorized by him – is permitted to use and reproduce the photograph "for any purpose whatsoever, without compensation."[1] By its own terms, the release applies to any purpose, which necessarily includes use and reproduction of Bonner's photo on the Fuji box.

Second, Bonner claims that the release is unenforceable. To be valid, a release "must be simple enough for a layperson to understand and additionally give notice of its import." Hohe v. San Diego Unified Sch. Dist., 224 Cal. App. 3d 1559, 1566 (1990). The release clearly met Hohe's standard. The release was not drafted with hyper-technical verbiage and gave notice of its effect: release to use photos for any purpose, without the right to obtain compensation in return. A layperson reading this contract would understand its import.

Third, Bonner argues that a trial is necessary because there is a dispute of fact whether Schnebly received consideration for her consent. See Cal. Civ. Code § 1550 ("It is essential to the existence of a contract that there should be . . . [a] sufficient cause or consideration."). But as the record reveals, Schnebly never expected to receive compensation for her

---

[1] Bonner argues that when the consent form states that "I . . . consent to and authorize the use and reproduction by you," it is ambiguous who "you" refers to. In this Court's opinion, it is unambiguous that – at the very least – the consent form authorized Menuez, whose name was on the top of the form, to use and reproduce Bonner's photo.

5

daughter's participation in the photo shoot. See Schnebly Depo. 58:5-12. Thus, it is irrelevant that Schnebly and Menuez dispute whether Bonner was ever paid $50 for her participation in the photo shoot. What is relevant is that Schnebly and Bonner received something of value – and something they clearly desired – in return for participating in the shoot and signing the consent form: the possibility of exposure in a magazine of national circulation. That consideration was sufficient to sustain the consent form. See Walters v. Calderon, 25 Cal. App. 3d 863, 876 (1972) ("[O]rdinarily, a court will not weigh the sufficiency of the consideration once it is found to be of some value. Generally, some value means any value whatever, even that of a peppercorn, a tomtit, or One dollar in hand.") (internal quotation and citation omitted).

Because Schnebly validly consented to the use and reproduction of her daughter's photograph for any purpose whatsoever, Bonner cannot prove that defendants lacked consent to use the photograph on their product. Accordingly, summary judgment for defendants on the § 3344 claim is granted.

### B. Common Law Appropriation of Likeness

A claim for common law appropriation of likeness is similar to a claim under § 3344, but has fewer elements. The plaintiff need only prove: (1) the defendant's use of plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury. See Eastwood v. Superior Court, 149 Cal. App. 3d 409, 416 (1983). Defendants are also entitled for summary judgment on Bonner's common law claim of misappropriation because, again, Bonner cannot prove that they lacked consent to use her photograph.[2]

### C. Business & Professions Code § 17200

---

[2] Bonner argues that even if she consented to the use and reproduction of her photograph, she never consented to the use and reproduction of her likeness. Bonner would have this Court interpret the consent form to mean that although Menuez enjoyed the right to sell the tangible product of the photograph negative, he could not license to third parties the right to publish the photograph, which would thereby expose Bonner's likeness to the public. This Court rejects Bonner's interpretation because it would lead to an absurd result. See Transamerica Ins. Co. v. Sayble, 193 Cal. App. 3d 1562, 1566 (1987).

Section 17200 prohibits unfair competition, which is defined as "any unlawful, unfair or fraudulent business act or practice. . . ."  "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent ."  Podolsky v. First Healthcare Corp., 50 Cal. App. 4th 632, 647 (1996).

Summary judgment is appropriate on the § 17200 claim because Bonner has not set forth evidence that would permit liability under that statute.  To prove that an act was fraudulent, the plaintiff must establish that "members of the public are likely to be deceived." Olsen v. Breeze, Inc., 48 Cal. App. 4th 608, 618 (1996) (quotation marks omitted).  Here, there is no evidence that members of the public were deceived in any meaningful way by defendants' use of the photo.

"Unfair," as that term in used in § 17200, "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Comm'ns Inc. v. Los Angeles Cellular Tele. Co., 973 P.2d 527, 544 (Cal. 1999).  There is no evidence in the record that would support the conclusion that the defendants' use of Bonner's photo violated the policy or spirit of antitrust laws.

"The 'unlawful' practices prohibited by . . . section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.  It is not necessary that the predicate law provide for private civil enforcement. . . . . [S]ection 17200 'borrows' violations of other laws and treats them as unlawful practices independently actionable." South Bay Chevrolet v. General Motors Acceptance Corp., 72 Cal. App. 4th 861, 880 (1999).  Because this Court is granting summary judgment to defendants on all of Bonner's other claims, summary judgment on this derivative claim is appropriate as well.

D. Negligence

7

Bonner alleges that the defendants' negligence was the legal and proximate causes of injuries that she suffered. There can be little doubt that the defendants owed Bonner a legal duty to obtain valid consent before using her photograph for commercial purposes. See Raymond v. Paradise Unified Sch. Dist. of Butte County, 218 Cal. App. 2d 1, 8-9 (1963) (setting forth the factors that courts must consider in determining whether the defendant owed plaintiff a legal duty).

Even so, because the defendants had valid consent to use Bonner's photograph, there is no triable issue whether defendants breached their duty. Accordingly, summary judgment for defendants on Bonner's negligence claim is appropriate.

### E. Intentional Infliction of Emotional Distress

Bonner's fifth cause of action alleges that the defendants engaged in extreme and outrageous conduct with the intent to cause Bonner emotional distress. Summary judgment is appropriate on this claim because as a matter of law, the conduct alleged does not rise to the level of "outrageous" conduct required to impose liability.

The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct. Cochran v. Cochran, 65 Cal. App. 4th 488, 494 (1998). In order to meet the first requirement of the tort, the alleged conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. Generally, conduct will be found to be actionable where the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Id. (internal quotations and citations omitted). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 496.

While the outrageousness of a defendant's conduct normally presents an issue of fact to be determined by the trier of fact, the court may determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.  See Trerice v. Blue Cross of California, 209 Cal. App. 3d 878, 883 (1989).  Thus in appropriate cases, this Court can decide as a matter of law that conduct is not so extreme and outrageous as to exceed what is tolerated in a civilized society.  See Berkley v. Dowds, 152 Cal. App. 4th 518, 534 (2007).

Here, summary judgment is appropriate because no reasonable juror could conclude that the defendants' conduct was utterly intolerable in a civilized community.  Defendants reasonably acted on their belief that Bonner had consented to use of the photograph for any purpose, including use on the back of the Fuji Film box.  Nothing approaching the kind of conduct necessary to support an IIED claim has been alleged or supported with evidence.

### F. Invasion of Privacy

In Count Six, Bonner alleges that defendants intruded on her seclusion, placed her in a false light in the public's eye, and misappropriated her likeness.  Summary judgment is appropriate on this claim because the misappropriation claim is redundant and the other privacy allegations are insufficient as a matter of law.

California has long recognized a common law right of privacy, which provides protection against four distinct categories of invasion. The four distinct torts grouped under the privacy rubric are: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness.  Eastwood v. Superior Court, 149 Cal. App. 3d 409, 416 (1983).

To the extent that Bonner's invasion on privacy claim is based on the fourth type of privacy claim, summary judgment is appropriate because the claim is duplicative of Count Two for misappropriation of likeness.  See Abrams v. Carrier Corp., 434 F.2d 1234, 1254-55 (2d Cir. 1970) (affirming district court's dismissal of duplicative causes of action).  There is

no difference between a privacy claim based on misappropriation of likeness and a claim for misappropriation of likeness; they are the same claim.

Bonner's complaint can fairly be read as also alleging two other types of privacy torts: intrusion on seclusion and false light. However, there is no evidence in the record that would support either type of claim. To prevail on a False Light cause of action a plaintiff must show, among other things, that defendant made a public disclosure <u>of a fact</u> about the plaintiff and the fact disclosed was false, and portrayed the plaintiff in a false light. <u>See, e.g.</u>, BAJI No. 7.22 (Spring 2007 ed.). There is no evidence that Fuji (or any other defendant) disclosed a <u>fact</u> about Bonner to the public.

The cause of action for intrusion has two elements: (1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person. <u>See Shulman v. Group W Prods., Inc.</u>, 955 P.2d 469, 490 (Cal. 1998). While this tort covers photographic <u>spying</u>, the tort is not committed if a photograph is taken in a public place. <u>See</u> Rest. 2d Torts § 652B cmt. c. In <u>Shulman</u>, a cameraman filmed two people involved in a car crash while they were removed from their car by the "jaws of life." The scene was then broadcast on a television show. The California Supreme Court held that no intrusion occurred because "[p]laintiffs had no right of ownership or possession of the property where the rescue took place, nor any actual control of the premises . . . , [n]or could they have had a reasonable expectation that members of the media would be excluded or prevented from photographing the scene." <u>Shulman</u>, 955 P.2d at 490. Thus, the court affirmed summary judgment for the defendant. <u>Id.</u> at 497-98.

If summary judgment in <u>Shulman</u> was appropriate, it is certainly appropriate here. Menuez took a picture of Bonner in a location over which Bonner had no right of ownership or possession, nor in which Bonner could have had a reasonable expectation of privacy. Indeed, Bonner expressly consented to the taking of the photograph. Bonner cannot now claim that she had a reasonable expectation of privacy while she played on the photographer's set.

Defendants' motion for summary judgment is GRANTED.  Plaintiff's motion for summary judgment is DENIED as moot.  Defendants' motion to strike is DENIED as moot.

**IT IS SO ORDERED.**

Dated: October 26, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE