IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DORSI BONNER,

    Plaintiff,

v.

FUJI PHOTO FILM, ET AL.

    Defendants.

No. C 06-04374 CRB

**ORDER GRANTING MOTION FOR ATTORNEY'S FEES & COSTS**

    Defendants Fuji Photo, Getty Images/LAM Design and Douglas Menuez – who all prevailed in Plaintiff Dorsi Bonner's suit for misappropriation of likeness – now move for an award of attorney's fees and costs pursuant to California Civil Code § 3344. Because statutory fees are mandatory, the Court GRANTS the defendants' motion. However, the defendants' request for, in total, more than $525,000 in attorney's fees and associated costs, is excessive for a variety of reasons. After making the requisite reductions, the Court finds that an award of $163,764.12 in fees and $6,382.96 in costs is appropriate. The hearing scheduled for March 7, 2008 is VACATED.

## BACKGROUND

    Bonner filed suit against Fuji Photo in California state court on January 13, 2006, alleging violation of § 3344 as well as common law misappropriation of likeness, violation of the California unfair businesses practices act, negligence, intentional infliction of emotional distress, and invasion of privacy. Bonner's suit stemmed from a 1993 photo shoot, in which

Menuez photographed Bonner and other children for Family Fun magazine. Bonner's mother, Christine Bonner, signed a model release on behalf of the plaintiff, authorizing the use and production of Bonner's photograph "for any purpose whatsoever." Bonner subsequently discovered that a picture taken during the Family Fun shoot was being used by Fuji to advertise disposable cameras.

In July of 2006, Getty removed the action to federal court based on diversity jurisdiction. See Notice of Removal. On August 15, 2006, Bonner filed a motion to remand concurrently with a motion to join additional defendants. See Docket Nos. 21 and 22. The Court exercised its discretion to deny remand, holding that the relevant factors "weigh[ed] heavily against permitting joinder" of two non-diverse defendants because it appeared that Bonner's motive in filing the joinder motion was merely to compel remand. See Order Denying Motion to Remand, Docket No. 50 at 10.

After the Court denied a motion to dismiss filed by Menuez, see Docket No. 51, Bonner and the defendants filed cross-motions for summary judgment. After conducting a hearing, the Court held in favor of defendants on the ground that Bonner's waiver precluded Bonner from being able to prove lack of consent, a requisite element of any claim under § 3344. For the same reason, the Court granted summary judgment to defendants on Bonner's claim of misappropriation of likeness. Further, the Court concluded that Bonner could not maintain a claim for negligence because there was no triable issue as to breach of duty, could not maintain a claim of IIED because defendants' conduct was not outrageous as a matter of law, could not prevail on a cause of action for invasion of privacy because defendants had not disclosed a fact or intruded into a private matter, and could not maintain a cause of action under § 17200 because all other claims – upon which the § 17200 could be predicated – also failed.

Bonner appealed and the defendants have now moved for attorney's fees and costs.

**STANDARD OF REVIEW**

In a diversity case, as here, the availability of attorney's fees is governed by state law. See Page v. Something Weird Video, 960 F. Supp. 1438, 1445 (C.D. Cal. 1996). Section

3344 of the California Civil Code mandates the award of attorney's fees and costs to the prevailing party. Because § 3344 provides that fees "shall" be awarded, an award is appropriate even if the plaintiff's suit is non-frivolous. See Kirby v. Sega of Am., Inc., 144 Cal. App. 4th 47, 62 (2006).[1]

State law also controls the method of calculating fees. See Mangold v. California Pub. Util. Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995). Under California law, courts calculate an award of attorney's fees by determining a lodestar figure "based on the reasonable hours spent, multiplied by the hourly prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type." Ketchum v. Moses, 24 Cal. 4th 1122, 1133 (2001). The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. See Serrano v. Priest, 20 Cal. 3d 25, 49 (1977). Factors to consider in enhancing or reducing the lodestar include: (1) the novelty and difficulty of the questions involved; (2) the skill displayed in presenting them; (3) the extent to which the nature of the litigation precluded other employment by the attorneys; and (4) the contingent nature of the fee award. See Nichols v. City of Taft, 155 Cal. App. 4th 1233, 1240 (2007).

## DISCUSSION

Before calculating an appropriate lodestar, the Court must address two threshold issues concerning the amount of reimbursable hours. Bonner argues that: (1) fees should be denied in their entirety to Getty and Menuez because they were brought into the lawsuit as third-party defendants; and (2) fees should be denied as to all parties for issues on which defendants did not prevail, such as the motion to dismiss. Both arguments are unpersuasive.[2]

---

[1] Defendants, as well as plaintiffs, are entitled to fees under § 3344 if they prevail. See Cusano v. Klein, 264 F.3d 936, 951 (9th Cir. 2001).

[2] Defendants anticipate the argument – not made by Bonner – that fees should only be awarded for work related to the § 3344 claim. Defendants persuasively argue that in this case, the liability issues are so interrelated – generally concerning the effect of Bonner's waiver – that it would be impossible to separate them into claims for which attorney's fees are properly awarded and claims for which they are not. Accordingly, "allocation is not required." Akins v. Enterprise Rent-A-Car, 79 Cal. App. 4th 1127, 1133 (2000). Nonetheless, for the reason explained infra at 9, the Court will reduce each party's lodestar to account for work conducted

3

### A. Fees for Getty & Menuez

Whether fees can be awarded to parties that participate in litigation <u>solely</u> as third-party defendants appears to be an unsettled question of California law. But the Court need not answer that question because Bonner established a direct cause of action against Getty and Menuez when she amended her complaint to add them as co-defendants. Because Getty and Menuez were defendants to Bonner's suit, there is no justification for denying them attorney's fees for prevailing against Bonner's § 3344 claim.

### B. Non-Prevailing Issues

The Court can also quickly dispense with the argument that the defendants are only entitled to fees for work done on prevailing issues or motions. Prevailing parties entitled to fees "are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit." <u>Cabrales v. County of Los Angeles</u>, 935 F.2d 1050, 1053 (9th Cir. 1991). Thus, "[i]f [the prevailing party] ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim-even though she may have suffered some adverse rulings." <u>Id.</u> The defendants are entitled to recover fees for the 106.2 hours spent on the motion to dismiss, even though that motion was denied, because they eventually prevailed on the § 3344 claim.

### C. Lodestar

Because all defendants are entitled to fees, the Court must calculate the lodestar. "The lodestar figure is calculated using the reasonable rate for comparable legal services in <u>the local community</u> for noncontingent litigation of the same type, multiplied by the reasonable number of hours spent on the case." <u>Nichols v. City of Taft</u>, 155 Cal. App. 4th 1233, 1242-43 (2007) (emphasis in original).

*1. Fuji*

Fuji requests $167,946.82 in attorney's fees. <u>See</u> Fuji Motion at 9. This calculation is based on 326.80 hours spent in litigation, with substantially all the work done by Partner Ellen Bender, who charged between $403.75-446.25 throughout the course of the litigation.

---

on claims for which attorney's fees may not be awarded.

4

Bender's hourly rate is reasonable. Bender has been admitted to practice law since 1984, and has been a partner at her firm since 1999. See Bender Decl. § 2. According to the American Intellectual Property Law Association's Report of the Economic Survey: 2007, IP Partners in San Francisco bill at the median rate of $460 per hour. See id. at Exh. G. Bender's rate is below the median, and reflects the fact that she offers Fuji – a longtime client – a discount rate.

Bender has submitted records demonstrating that her firm billed 326.8 hours in this litigation. Fuji was the first defendant involved in the litigation and although the case terminated at summary judgment, there is nothing per se objectionable about the amount of time requested. Nevertheless, Bender submitted time sheets in block-billed format. Thus, Bender has not identified the amount of time spent on each discrete task performed during the course of a particular day. Bender's use of block-billing "render[s] it virtually impossible to break down hours," Bell v. Vista Unified School District, 82 Cal. App. 4th 672, 689 (2000), and therefore the Court cannot accurately discern whether a reasonable amount of time was spent on discrete tasks. See Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007) ("[B]lock billing makes it more difficult to determine how much time was spent on particular activities.").

The California State Bar's Committee on Mandatory Fee Arbitration has concluded that block billing "hides accountability" and "may increase time by 10% to 30%." See The State Bar of California Committee on Mandatory Fee Arbitration, Arbitration Advisory 03-01 (2003). California courts have held that although block-billing is not prohibited outright, the trial court may "exercise its discretion in assigning a reasonable percentage to the entries, or simply cast them aside." Bell., 82 Cal. App. 4th at 689.

In Bender's case, well over half of all entries – approximately 60% – are billed in block format. Moreover, while approximately 40% of the entries are not block billed, that is so because Bender performed only one task on that day. Thus, a disproportionate amount of days where substantial work was performed were billed in block format, making it impossible to audit the bulk of Bender's work.

Because so much of Bender's work cannot be accurately audited, the Court is concerned that her bill may be inflated by as much as 30%. Accordingly, the Court will impose an across-the-board reduction of 30% to Bender's bill, resulting in a lodestar of $117,562.77 for Fuji.

*2. Getty & LAM Designs*

Getty & LAM seek $126,236.50 in attorney's fees for 316.30 hours spent working on the Bonner matter. Getty and LAM were represented by Davis, Wright & Tremaine ("DWT"), which staffed the case entirely with associates. Because no partners dedicated time to the matter, the highest hourly rate requested is that of Sam Dawood – a senior associate who led the DWT team – at $370-90 per hour. Dawood, who graduated from law school in 1995, bills at a rate comparable to other lawyers who have practiced IP law for 10-14 years, who bill an average of $371 per hour. See Dawood Decl. Exh. H at 6. Considering that San Francisco IP lawyers post the second highest billing rates in the country, Dawood's rate is reasonable. See id. at 7. Similarly, the rates requested for the other associates who worked on Bonner – ranging from $250-320 – are reasonable in light of the average billing rate of $337 per hour for IP associates in San Francisco. See id. at 7.

As with Fuji's counsel, DWT has submitted billing invoices that at first blush seem reasonable: 316.30 hours is not a prima facie excessive amount of time to spend on a case that terminates at summary judgment, particularly since DWT took the lead on drafting the defendants' summary judgment memo. See Dawood Decl. ¶ 4.

However, DWT's time is also billed in block format. Well over half of all entries – and a disproportionate number of entries for days where significant hours were spent working on the case – were billed in block format. Again, because the Court cannot audit the bulk of counsel's entries, the Court is concerned that the Getty bill may be inflated by as much as 30%. Accordingly, the Court will also reduce Getty's lodestar by 30%, resulting in a lodestar of $88,365.55.

///

*3. Menuez*

Menuez's counsel, the Soni Law Firm, has requested a total reimbursement of $230,970.50 for 465.30 hours spent on the on case. See Motion at 18.[3] Soni staffed the case with all partners, and more than half the work (50.7%) was billed by Surjit Soni, who bills at the rate of $595 per hour. In the Court's opinion, Soni's rate was unreasonable and must be substantially reduced. To be sure, Soni has over 20 years of litigation experience, but his rate far exceeds even that of San Francisco IP partners in the third quartile (i.e., those who bill in the top 25%) who bill at an average rate of $530 per hour (the nationwide average for IP partners who have 15-24 years of experience and bill in the third quartile is $495). The lodestar figure is intended to reflect the "reasonable rate for comparable legal services in the local community for noncontingent litigation of the same type." Nichols, 155 Cal. App. 4th at 1242-43. In light of Soni's experience and performance, the Court believes it is reasonable to award Soni fees at the rate of $460 per hour: the median rate charged by IP Partners in San Francisco. See Soni Decl. Exh. G at 6.

The three other partners who worked on Bonner for 225.4 hours all billed at the rate of $400 per hour. In light of the San Francisco average of $469 and median of $460 for IP Partners, a rate of $400 per hour is reasonable. Accordingly, with a reduction of Soni's rate to $460 per hour, the lodestar comes down to $199,124.

The Court believes that Soni's lodestar must be further reduced because Soni also block billed. A review of Soni's entries reveals that less than half of the entries are block billed, so his bill is probably less inflated than those submitted by Fuji and Getty. Accordingly, the Court believes that the effect of Soni's block billing can be remedied by a reduction of 20% in the lodestar, resulting in an ultimate lodestar of $159,299.20.

Although the Court is troubled by the fact that Soni billed substantially more hours than co-counsel, Bonner has not persuasively identified areas of the invoice that are

---

[3] Soni has requested an additional $4,370 for preparing the reply brief and other work conducted since November 8, 2007, but has not submitted an invoice clarifying the nature of the work. Accordingly, the Court cannot determine whether the amount requested is reasonable and the request is denied.

7

unreasonable. Accordingly, the Court will not further reduce the amount of hours claimed by Soni.

Bonner estimates that Soni spent 71.6 hours preparing the motion to dismiss – compared to 11.9 for Fuji and 22.7 for Getty – see Ralston Decl. Attachment C, but that is so because the motion was drafted by Menuez. See Motion to Dismiss, Docket No. 24. Similarly, Soni spent more time responding to Bonner's motion for summary judgment than the other defendants – 106.2 hours compared to 81.8 for Fuji and 30.1 for Getty – but Getty acknowledged that other defendants, presumably Soni, took the lead in opposing Bonner's motion. See Dawood Decl. ¶ 6. Accordingly, Bonner has offered no persuasive reason for further reducing Soni's lodestar.

D. Enhancement or Reduction

After calculating the appropriate lodestar, the Court must decide whether to enhance or reduce the award in light of particular factors, including the following: (1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award; (4) the fact that an award against the state would ultimately fall upon the taxpayers. See Serrano v. Priest, 20 Cal. 3d 25, 49 (1977). The Serrano factors are not exclusive and a court may determine that other factors are relevant in a particular case. See Thayer v. Wells Fargo Bank, 92 Cal. App. 4th 819, 834 (2001). Ultimately, the purpose of any adjustment "is to fix a fee at the fair market value for the particular action." Ketchum v. Moses, 24 Cal. 4th 1122, 1132 (2001).

The factors identified in Serrano unanimously support a reduction of the lodestar. First, the questions presented by Bonner were neither novel nor difficult. Indeed, Soni argues that in light of the signed waiver, Bonner's claims were so meritless as to be "frivolous" and "baseless." See Soni Motion at 14. According to Soni, "[a] first year law student" would have known that Bonner's arguments for invalidating the waiver would lose. See id. at 15. Regardless of whether a first year law student could have prevailed for the

defense in this case, there can be no doubt that the central issues were straightforward and relatively simple.

Second, no one asserts that litigating this case precluded other employment. In fact, both Soni and Bender concede that they were able to take on other cases. See Menuez Motion at 19; Fuji Motion at 12.

Third, counsel billed their clients for a fixed fee, and did not work on contingency. See Menuez Motion at 19; Fuji Motion at 12.

The fourth Serrano factor is inapposite within the context of this case.

Other factors support a reduction in fees as well. Perhaps most significantly, counsel for both Fuji and Menuez assigned the litigation almost exclusively to partners. In the case of Menuez, partners for the Soni firm conducted the entire litigation. Although experienced lawyers may be able to perform services in less time than associates, there can be no doubt that the lodestars requested by Menuez and Fuji are substantially inflated because their counsel refused to delegate even the most menial tasks to associates. To calculate a fee that will accurately reflect the "fair market value" of the work performed on this relatively simple case, the Court must reduce the lodestar of both Soni and Bender.

Moreover, although it is impossible to extricate the work performed by defense counsel on the § 3344 claim from work performed for other claims for the purpose of setting the lodestar, California courts permit a reduction in fees to more accurately reflect the amount of time spent on the reimbursable claim. See Graciano v. Robinson Ford Sales, Inc., 144 Cal. App. 4th 140, 161 (2006) ("[W]here a party is found to prevail on causes of action under the CLRA or ASFA, but also litigated other factually and/or legally distinct causes of action that do not provide for entitlement to an attorney fee award, a negative multiplier may be applied by the court in its discretion if it cannot ascertain and omit those specific hours spent on the unrelated causes of action.").[4]

---

[4] Menuez argues that even work spent on claims without a fee shifting provision deserve full compensation because an award is warranted under 28 U.S.C. § 1927, Rule of Civil Procedure 11, and the Court's inherent powers. However, imposition of an award under the preceding authorities would require a finding of subjective bad faith. See Miller v. Cardinale,

9

Accordingly, the Court will make the following reductions: Because the questions involved were straightforward and relatively simple, the case did not preclude other employment, and the lodestar reflects work performed on other claims that is not entitled to reimbursement, the lodestar for all three defendants will be reduced 40%. Additionally, because counsel for Fuji and Menuez billed out even the most basic task at partner rates, the award to Bender and Soni will be reduced an additional 20%.

As a result of these reductions, the Court awards attorney's fees as follows: $47,025.11 for Fuji, $53,019.33 for Getty, and $63,719.68 for Menuez, for a total of $163,764.12.

### E. Costs

In addition to fees, § 3344 expressly provides that the prevailing party is entitled to an award of costs. The defendants have requested certain costs through a Bill of Costs filed pursuant to 28 U.S.C. § 1920, and all remaining costs through § 3344. Because the clerk will adjudicate the § 1920 requests, the Court addresses only whether costs are appropriate under § 3344.

Under California law, where a statute such as § 3344 authorizes an award of costs but is silent as to which costs are to be awarded, the Court must look to Code of Civil Procedure § 1033.5, which sets forth those costs that may or may not be recovered in a civil action. See Page v. Something Weird Video, 960 F. Supp. 1438, 1447 (C.D. Cal. 1996). Section 1033.5 expressly authorizes recovery of certain costs, including expenses associated with travel for depositions, service of process, and photocopies of exhibits that "were reasonably helpful to aid the trier of fact." Cal. Code Civ. P. § 1033.5(a). But § 1033.5 also expressly precludes recovery of other expenses, including fees for legal research (computer or otherwise), and postage and photocopying charges for non-exhibits. See id. § 1033.5(b). All costs not expressly authorized or prohibited may be awarded at if "reasonably necessary to the conduct

---

361 F.3d 539, 548 (9th Cir. 2004); B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1107 (9th Cir. 2002). Menuez has not persuasively established that Bonner filed this claim for any purpose other than to recover damages on a potentially-meritorious claim.

10

of the litigation rather than merely convenient or beneficial to its preparation." Id. § 1033.5(c)(2).

### *1. Fuji*

Fuji seeks $8,944.18 in costs pursuant to § 3344. The bulk of Fuji's requested costs are for prohibited items such as photocopies, computer legal research and postage. Fuji does request $407.50 in service of process fees, which are authorized by § 1033.5(a)(4) and will be awarded.

Fuji also requests travel expenses for the cost of traveling between San Francisco and Los Angeles, where Bender is based. Section 1033.5(a)(3) expressly authorizes reimbursement of travel expenses to attend depositions, and therefore the Court awards $2,152.51, which Bender requests for airfare, rental car, hotel and other expenses associated with traveling to San Francisco for the depositions of Dorsi Bonner and Bonner's mother. See Bender Decl. Exh. H.[5] The fact that Fuji hired counsel in Los Angeles rather than San Francisco does not preclude Fuji from recovering the costs of Bender's travel. See Thon v. Thompson, 29 Cal. App. 4th 1546, 1548 (1994).

Bender also requests $1,396.53 for traveling to San Francisco to participate in the Court's hearing on Bonner's motion to remand and Menuez's motion to dismiss. Because § 1033.5 does not expressly authorize such costs, they are recoverable to the extent that the travel was necessary to conduct of the litigation and the costs are reasonable in amount. See Cal. Code Civ. P. § 1033.5(c)(2); Page v. Something Weird Video, 960 F. Supp. 1438, 1447 (C.D. Cal. 1996). The cost of traveling to San Francisco to participate in the Court's hearings was necessary and not just for counsel's convenience. However, the requested amount will be trimmed because it was not necessary to use a travel agent or a limo service, and because "meal expenses [cannot] be justified as 'necessary to conduct the litigation' since attorneys have to eat, whether they are conducting litigation or not." Ladas v.

---

[5] The Court's calculation excludes $122.25 in travel agency fees, $200 in unenumerated "travel expenses," and $200 of estimated meal expenses. Even though deposition travel costs are recoverable, the Court must exclude costs such as these that are not necessary in order to conduct the litigation. See Thon v. Thompson, 29 Cal. App. 4th 1546, 1549 (1994).

11

1 California State Auto. Ass'n, 19 Cal. App. 4th 761, 774-75 (1993). Accordingly, Bender is awarded $988.05 for costs associated with attending the Court's October 27, 2006 hearing.

In total, service of process and travel costs in the amount of $3,548.06 are awarded to Fuji and Bender, with all other costs excised as either prohibited or not necessary to the litigation.

### 2. *Getty*

Getty requests $4,864.05 in costs to be reimbursed pursuant to § 3344. See Dawood Decl. ¶ 7. The majority of costs requested are for Lexis-Nexis research and photocopies of non-exhibits, which are not reimbursable. See Cal. Code Civ. P. § 1033.5(b)(2), (b)(3).

Getty does request $440.05 in airfare costs for flying from Seattle to San Francisco to participate in the deposition of Bonner's mother. See Dawood Decl. Exh. B. That amount is expressly authorized by § 1033.5(a) and is awarded.

Getty also requests $410.85 in airfare and $404.45 in associated costs – meals, lodging, cabfares and parking – for attending the Court's October 27, 2006 hearing. See id. Again, the airfare is recoverable as are the costs of lodging, but a reduction will be made to account for parking and meals. Therefore, the Court awards $250 for lodging, for a total of $1,100.90 in costs.

### 3. *Menuez*

Menuez seeks to recover $5,052.24 in costs pursuant to § 3344. See Soni Decl. ¶ 10. Again, the majority of charges are for prohibited items, such as messengers and legal research. However, Soni has requested some valid travel costs.

In particular, Soni incurred $916.80 in travel expenses to attend three depositions, and $817.20 in necessary travel expenses to attend both a hearing on the motion to dismiss and a hearing on a motion to compel. After excising the cost of unnecessary expenses such as meals, the Court finds that Soni is entitled to an award of $1,734 in costs.

///

**CONCLUSION**

In sum, the Court awards fees pursuant to § 3344 in the amount of $47,025.11 for Fuji, $53,019.33 for Getty, and $63,719.68 for Menuez, for a total of $163,764.12. The Court also awards costs pursuant to § 3344 in the amount of $3,548.06 for Fuji, $1,100.90 for Getty, and $1,734 for Menuez, for a total of $6,382.96.

**IT IS SO ORDERED.**

Dated: February 12, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE